**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**TRISTAN MYERS**                                                                    **PLAINTIFF**


**VS.**                              **No. 3:25-cv-00188 PSH**


**FRANK BISIGNANO, Commissioner,
    Social Security Administration**                                **DEFENDANT**


**ORDER**

Plaintiff Tristan Myers ("Myers") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Bisignano") to deny his claim for Supplemental Security Income ("SSI"). Myers contends the Administrative Law Judge ("ALJ") erred in two ways: (1) by failing to provide necessary background information to Dr. Kenneth Jones ("Jones"), who performed a mental diagnostic evaluation in 2024; and (2) by failing to properly assess Jones' medical source opinion. The net effect of these errors, according to Myers, is that the ALJ failed to properly assess his residual functional capacity ("RFC").

Bisignano states substantial evidence supports the ALJ's decision that Myers was not disabled during the relevant period. Bisignano is correct, and the ALJ's

1

decision is affirmed and the case dismissed for the reasons stated below.

The parties ably summarized the medical records and the testimony given at the administrative hearing, which was conducted on March 14, 2025.  (Tr. 34-55).  The AJ's decision was issued on May 1, 2025.  (Tr. 17-27).  The Court has carefully reviewed the record to determine whether there is substantial evidence to support Bisignano's decision.  42 U.S.C. § 405(g).  The relevant period under consideration is from October 23, 2023, when Myers' application for benefits was filed, through May 1, 2025, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by his attorney, Myers stated he was 26 years old and had completed as associate's degree in college in 2022.  Myers indicated he had academic problems with math classes and general struggles with learning due to ADHD.  He testified to difficulties meeting academic deadlines, even if accommodated with extra time.

At the time of the hearing, Myers resided with his mother, sometimes helping out with dishes and taking out the trash.  He did not do his own laundry or yard work.  Myers uses a microwave and can drive but avoids doing so because "it stresses me out a lot."  (Tr. 39).  Since he is not good with finances Myers testified he is given a monthly allowance from his father (about $50 on a debit card).  He

acknowledged problems remembering instructions and stated he did poorly around other people as well as struggling with sustained focus and adapting to change. He stated he did not make any friends while pursuing his associate's degree and had not made any new friends "in like a decade or more." (Tr. 43).

Myers testified that it took him five years, from 2017–2022, to obtain his associate's degree, a two-year diploma. He was allowed to take school exams in a small room with the door closed so that there would be no distractions. He stated he never mastered the art of taking notes in the classroom and was assisted by the disability services office at the school on a weekly basis. There were instances where he cried in the classroom because "I just couldn't keep up and felt overwhelmed." (Tr. 43). Myers credited his mother for helping with his school assignments.

Myers testified he takes Citalopram and Hydroxyzine on a regular basis, without side effects.

Myers' mother testified, adding details to his educational experiences. She described the accommodations provided to him, the support from some "really understanding" teachers, support from the family, the length of time it took to complete the degree, the light load of classes (one class per semester after struggling with a heavier load), and his frustrations with managing his school

work. (Tr. 47). She described "meltdowns and inability to follow directions for an extended period of time." (Tr. 48). She also noted his trouble with doing tasks which involve multiple steps. For example, she stated her son does not do his own laundry due to the multiple steps required for the task.

Ms. Myers also stated her son "hates leaving the house" and will "fret and fret and fret" about upcoming appointments away from home. (Tr. 49). Although her son has a driver's license he does not drive alone due to fear. She opined that his medications help, and that she frequently reminds him to take them. And he meets online with a therapist every two weeks. Ms. Myers said her son has a small group of friends from high school and junior high, and they occasionally play Dungeons and Dragons and infrequently meet in person.

Charles Turner ("Turner"), a vocational expert, testified. The ALJ asked Turner to consider a hypothetical worker of Myers' age, education, and experience, who could work at all exertional levels with the following restrictions: can perform simple, routine and repetitive tasks with the ability to make simple work-related decisions; has occasional interaction with co-workers and supervisors and the public; has the ability to adapt to simple routine changes where the changes are few and infrequent; and can perform work at a normal pace without high rate production quota. Turner testified that such a hypothetical worker could perform

the jobs of kitchen helper (dishwashing, sweeping, and mopping), hospital cleaner, and motel cleaner. Turner testified no jobs were available if the hypothetical worker needed direction or redirection of tasks every 60 to 90 minutes during the workday. (Tr. 53-55).

*The ALJ's Decision*

In his May 1, 2025 decision, the ALJ determined Myers had the severe impairments of autism, neurocognitive depression, and anxiety. The ALJ found Myers did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ specifically addressed whether Myers met Listings 12.04, 12.06, 12.10, and 12.11. As part of this analysis the ALJ considered the "paragraph B" criteria, rating Myers in four broad areas of functioning, finding he had: (1) a moderate limitation in understanding, remembering or applying information; (2) a marked limitation in interacting with others; (3) a moderate limitation with regard to concentrating, persisting or maintaining pace; and (4) a moderate limitation in adapting or managing oneself. Since Myers was not markedly limited in two of these areas, or extremely limited in one area, the "paragraph B" criteria were not satisfied.

The ALJ also found the "paragraph C" criteria were not met. Specifically,

the ALJ found the record did not establish that Myers has only a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life.

The ALJ determined Myers had the RFC to perform a full range of work at all exertional levels with limitations which generally mirrored the hypothetical question posed to Turner, varying only in that the ALJ found Myers had the capacity to work with no contact with the public.

The ALJ opined that Myers' impairments could reasonably be expected to cause his alleged symptoms. However, the ALJ found Myers' statements about the intensity, persistence and limiting effects of the symptoms were "inconsistent with the medical evidence and the other evidence in the record." (Tr. 24). The ALJ conceded the record supports Myers' "depressed mood, anxiety, lack of motivation, and socialization issues." (Tr. 24).

The ALJ thoroughly reviewed the testimony of Myers and his mother and considered the relevant medical evidence. In particular the ALJ addressed the March 2024 consultative examination of Jones:

> During consultative examination in March 2024, the claimant reported having autism and ADHD. He was diagnosed with autism spectrum disorder (ASD) in 2011 and is currently treated with Celexa and Buspirone. He stated that he recently began attending counseling every two weeks. He denied adaptive functioning and stated his only

problem would be his social functioning. He completed high school and had an associate's degree in general studies. The examiner noted that the claimant behaved in a manner consistent with an adult with ASD and was fixated on odd topics. The claimant stated that he spent the majority of his time taking care of his cats but does play Dungeons and Dragons with a few friends from high school every two months. He stated that he has never attempted to work and does not know if he could work or not. He continues to live with his mother. He does have a driver's license but does not know how to manage finances. During the mental state examination, he presented as calm and stable and did not report or display mood or anxiety problems. His affect was within normal limits and congruent with mood. Speech was unremarkable with normal tone, pace, and volume. Thought process was goal directed and logical. He did not present with bizarre or peculiar preoccupations, and no intrusive thoughts were evident. He reported a history of paranoia and occasional auditory hallucinations. He was alert and oriented to person, place, time and purpose of the evaluation. Immediate memory was correct for 7 digits forward, and 5 digits reversed. He was able to state from memory his social security number, phone number and address. When presented with four unrelated words, he was able to recite the words with two repetitions. After a five-minute delay he was able to recall all four words without the need for clues. Information, calculation, abstract thinking, insight and judgment were all intact. The claimant was diagnosed with ASD and ADHD.

(Tr. 24-25).

The ALJ found the opinion of Jones to be "somewhat persuasive," analyzing it as follows:

Dr. Jones opined that the claimant did not experience adaptive functioning limitations, apart form [sic] his difficulties with social skills. He would have difficulties in an environment with those who did not understand his condition, and this would likely cause him to experience excessive anxiety. His cognitive functioning abilities are

estimated to be in the average range.  He understands instructions but would likely have problems working without monitoring.  He would likely fixate on extraneous stimuli and would have problems making independent decisions.  He would likely do well with a job that had repetitive tasks without variation or schedule changes.  He would have difficulties if working in a high stress environment or where [sic] is a good deal of social activity (e.g. a restaurant or bush [sic] office setting). If able to work alone at his own pace he could complete basic repetitive tasks (e.g. stocking shelves or packing boxes).  This opinion is general supported by Dr. Jones in-person examination of the claimant, but it is not consistent with the record as a whole.  The record shows that the claimant would have marked social limitation.  He has difficulty interacting with others.

(Tr. 26).

Relying upon Tuner's expert testimony, the ALJ concluded that there were jobs which Myers could perform, and he was not disabled.  (Tr. 18-28).

*Claim One – ALJ error by failing to provide necessary background information to Jones.*

The relevant regulations provide a consultative examiner should have "necessary background information" about a claimant's condition.  See C.F.R. §§ 404.1517; 416.917.  Myers, citing the Sixth Circuit case *Brantley v. Astrue*, 637 Fed. Appx. 888 (6th Cir. 2016), contends remand is appropriate due to this failure. Myers correctly observes that Jones' opinion noted, in four instances, the absence of medical or clinical paperwork or notes from a therapist or prescribing physician. (Tr. 467, 470).  Myers surmises that Jones "obviously viewed the absence of such

information as a limiting factor." Doc. No. 11, page 32.

No reversible error occurred in this regard, for two reasons.

First, the Sixth Circuit case cited by Myers is overshadowed by the controlling Eighth Circuit case of *Bradford v. O'Malley*, 104 F.4th 1055 (8th Cir. 2024). There, the Court focused on "necessary" background information, noting that the plaintiff did not show the consultative examiner's access to other medical records was necessary "in the sense that they would have materially influenced a functional assessment" of the claimant's capacity at the time of the examination. *Id.* at 1060. The consultative examiner in *Bradford* had no access to the medical record but was aware the claimant suffered from several impairments and had access to x-rays. Here, Jones had prior access to Myers' November 2023 Adult Function Report (Tr. 342-349) and was aware of Myers' diagnoses of autism spectrum disorder and ADHD. The pivotal question is whether access to more medical records would have materially influenced Jones' functional assessment of Myers. Myers does not point to medical records which would have such impact. Older medical records appear to simply reinforce the information which Jones possessed. For example, Myers' diagnosis of autism from 2011 would not have materially influenced Jones' 2024 assessment.

Second, while Myers states that Jones obviously viewed the lack of access to

medical records as a limiting factor, Jones did not state he was limited. In addition, his opinion was not qualified in any way based upon lack of access.

*Claim Two – ALJ failed to properly assess Jones' medical source opinion.*

Myers criticizes the ALJ's assessment of Jones' opinion, in part due to the brevity of the ALJ's analysis. Myers alleges the ALJ devoted "just three short sentences" to Jones' assessment. Doc. No. 11, page 32.

The relevant regulations require the ALJ to assess the persuasiveness of Jones' opinion. At a minimum the ALJ must address the opinion's supportability and consistency. 20 C.F.R. § 416.920c(a), (c). Supportability is whether the opinion is supported by objective medical evidence and by the source's own explanation of the opinion. Consistency is whether the opinion is consistent with the other medical evidence in the record. 20 C.F.R. § 416.920c(c).

In this instance the ALJ deemed Jones' opinion "somewhat persuasive" and found it was "generally supported by Dr. Jones in-person examination of the claimant, but it is not consistent with the record as a whole. The record shows that the claimant would have marked social limitation. He has difficulty interacting with others." (Tr. 25).

The ALJ properly assessed Jones' opinion. While Myers views the ALJ's treatment as cursory and limited to three sentences, a fair reading of the entirety of

the ALJ's decision produces a different view.

The ALJ addressed supportability, citing Jones' in-person examination results, which he recounted in detail elsewhere in the decision. *See Martin v. O'Malley,* 2024 WL 1414745 (E.D. Ark. April 2, 2024) (examples of supporting facts found elsewhere in the ALJ's decision). Regarding the supportability of the opinions, a physician's own treatment notes are typically relevant to the supportability of the medical opinion. *See, e.g., Dotson v. Saul*, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021); *Jarmon v. Kijakazi,* No. 4:21-CV-00032 BSM/JJV, 2022 WL 55494, at *3 (E.D. Ark. Jan. 5, 2022), report and recommendation adopted sub nom. *Jarmon v. Soc. Sec. Admin.*, No. 4:21-CV-00032-BSM, 2022 WL 1177362 (E.D. Ark. Apr. 20, 2022), aff'd sub nom. *Jarmon v. Kijakazi*, No. 22-2619, 2023 WL 2378523 (8th Cir. Mar. 7, 2023). The thorough review of Jones' examination notes weighs in favor of the supportability evaluation. Further, brevity alone of the analysis is not reversible error. *Cropper v. Dudek*, 136 F.4th 809 (8th Cir. 2025).

The ALJ also addressed consistency, citing his opinion that Myers had a marked limitation in interacting with others. The ALJ then addressed the opinions offered by the state agency psychological consultants that Myers had a moderate limitation in this area. Thus, Jones opined Myers was more limited than the

findings expressed by the state consultants. This is an adequate and understandable evaluation of the consistency factor.[1]

Much of the evidence strongly supports the ALJ's nonexertional limitations. To the extent that there are minor items which may run counter to the ALJ's decision, this does not compel reversal of the ALJ's ruling:

> In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.,* 879 F.2d 441, 444 (8th Cir.1989) (citing *Steadman v. S.E.C.,* 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L.Ed.2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin,* 349 F.3d at 555 (citing *Bates v. Chater,* 54 F.3d 529, 532 (8th Cir.1995)), or "review the factual record *de novo.*" *Roe v. Chater,* 92 F.3d 672, 675 (8th Cir.1996) (citing *Naber v. Shalala,* 22 F.3d 186, 188 (8th Cir.1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992), and citing *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989)); *accord Baldwin,* 349 F.3d at 555; *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th

---

[1]Myers also faults the ALJ for finding him capable of performing the jobs of kitchen helper, hospital cleaner, and motel cleaner despite his finding that Myers "would have difficulties working in a high stress environment or where [there] is a good deal of social activity." (Tr. 470). The ALJ cited a restaurant or a busy office as examples of high stress environments. But the ALJ further ruled that a favorable environment would be one where Myers was able to work alone at his own pace and complete basic repetitive tasks. (Tr. 25). There was no showing that all jobs cited by the vocational expert fell into the high stress category.

Cir.1994) (citing *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff,* 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page,* 484 F.3d at 1042–43 (citing *Kelley v. Barnhart,* 372 F.3d 958, 961 (8th Cir.2004); *Travis v. Astrue,* 477 F.3d 1037, 1040 (8th Cir.2007); *Cox v. Barnhart,* 471 F.3d 902, 906 (8th Cir.2006)).

*Rittenhouse v. Astrue*, 767 F. Supp. 2d 985, 1000–01 (N.D. Iowa 2011).

In summary, substantial evidence supports the determinations reached by the ALJ. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Bisignano is affirmed and Myers' complaint is dismissed with prejudice.

IT IS SO ORDERED this 20th day of April, 2026.

_____
UNITED STATES MAGISTRATE JUDGE

13